IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 3, 2023 Session

**STATE OF TENNESSEE v. COREY BROWN**

**Appeal from the Criminal Court for Shelby County**
**No. C1810732, 18-07054   Jennifer Johnson Mitchell, Judge**

————————————————————

**No. W2023-00043-CCA-R3-CD**

————————————————————

The defendant, Corey Brown, was found guilty by a Shelby County jury of especially aggravated robbery for which he received a sentence of twenty-one years in prison.  On appeal, the defendant contends that the evidence presented at trial was insufficient to support his conviction and that the trial judge failed to execute its responsibility as thirteenth juror.  Following our review, we affirm the defendant's conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J.  and ROBERT H. MONTGOMERY, JR., J., joined.

M. Roxana Rudolph, Memphis, Tennessee (on appeal) and James Jones, Memphis, Tennessee (at trial) for the appellant, Corey Brown.

Jonathan Skrmetti, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Steve Mulroy, District Attorney General; and Brad Reasonover, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

On July 2, 2018, Sebastian Parker, the victim, operated a recording studio on South Dudley Street.  The recording studio was located on the second floor of a multifunctional building and consisted of two rooms.  The first room was a "production" room with several monitors and TVs, a sound board, a computer, and a couch.  The second room was used for recording.

**State's Proof at Trial**

According to Mr. Parker, he had an appointment on July 2, 2018, with a man he knew by the name "Goon Carleon" for a one hour recording session. "Goon Carleon" was the stage name for Corey Brown, the defendant. The defendant and Mr. Parker were acquainted professionally since the defendant had previously recorded at the studio. When the defendant arrived that day, he was accompanied by Christopher Bolden with whom Mr. Parker was unacquainted. After Mr. Parker saw the defendant and Mr. Bolden arrive on the surveillance monitor, he went downstairs to open the locked exterior door. Immediately after entering the studio, Mr. Bolden asked to use the restroom, and Mr. Parker explained the bathroom was on the first level of the building. When Mr. Bolden returned from the restroom, Mr. Parker turned to acknowledge him only to find Mr. Bolden holding a gun with a red beam pointed at him. According to Mr. Parker, Mr. Bolden said, "N****, you know what time it is." Mr. Parker put his hands in the air. The defendant hit Mr. Parker across the head with a gun, causing him to fall to his knees.

Mr. Parker testified that while on his knees, the defendant discharged a 9mm handgun twice, striking Mr. Parker once in the leg, causing Mr. Parker to fall facedown onto the floor. The defendant and Mr. Bolden flipped Mr. Parker onto his back and searched his pockets for money, credit cards, bank cards, phone and keys. Then, Mr. Bolden ran downstairs, but was unable to operate the locks in order to exit the building. When the defendant went to help Mr. Bolden unlock the door, Mr. Parker was able to message another engineer that "Goon shot [him]."

When both the defendant and Mr. Bolden returned to the studio, Mr. Parker "played dead" on the floor. Mr. Parker testified that then "the other guy [Mr. Bolden] pulled the gun. That's when he – he shot me." After shooting Mr. Parker a third time, the defendant and Mr. Bolden "ran out" of the studio and fled the building. However, prior to leaving, the defendant took a surveillance monitor and Mr. Parker's personal belongings, and Mr. Brown took an assault rifle that belonged to Mr. Parker.

Despite having been shot several times, Mr. Parker was able to make it downstairs to a nearby bakery where someone called the police. Officer Kyle Vlastos, with the Memphis Police Department (MPD), responded to the shooting and, upon arriving and finding Mr. Parker, asked Mr. Parker who had shot him. Mr. Parker responded he was not sure of the shooter's name but thought he went by the name "Goon Carleon." Mr. Parker was then transported to the hospital where he remained hospitalized for three days.

As part of MPD's investigation, Officer Newton Morgan, the crime scene investigator, collected several items of physical evidence. Officer Morgan collected three spent 9mm casings, one from the computer room and two from the recording room. Officer

Morgan also collected a small bag containing 4.3 grams of marijuana. He testified that he did not find any scales, plastic baggies, cash, or any additional marijuana at the scene.

On the same day, Detective Jennifer Robinson, the lead investigator with MPD, interviewed Mr. Parker in the hospital. During that interview, Mr. Parker told Det. Robinson that there were two suspects and that he was familiar with one of them. Mr. Parker testified at trial that he told Det. Robinson everything that had occurred, including the presence of Mr. Bolden and the second gun and that it was Mr. Bolden who shot him in the shoulder. Mr. Parker testified that at the time of the interview, he was unaware of the fact that the surveillance monitor or the assault rifle had been taken and, therefore, did not tell Det. Robinson about those items.

The next day, July 3, 2018, Det. Robinson returned to the hospital with a photographic lineup. Mr. Parker positively identified the defendant, as the one who robbed and shot him. Mr. Parker noted on the lineup that the defendant was the one who "robed (sic) me and shot me 3 times." At that time, the name of the second suspect was not known. On July 17, 2018, Mr. Parker gave a formal statement to Det. Robinson at the precinct. Det. Robinson presented Mr. Parker with a second photographic line up. Upon reviewing the second line up, Mr. Parker positively identified Christopher Bolden as "the other guy that robbed and shot me." It was during this interview that Mr. Parker told Det. Robinson the gun used by the defendant was a .40 caliber Glock.

Cervinia Braswell, an expert in firearm identification and a special agent with the Tennessee Bureau of Investigation, examined the shell casings found at the scene. She identified the gun used during the robbery as a 9mm handgun, not a .40-caliber Glock as described by Mr. Parker. Agent Braswell, however, testified that while there is a significant difference in diameter between a .40 or .45 caliber bullet and a 9mm bullet, it would be difficult for a lay witness to identify the caliber of a weapon just by seeing it. Special Agent Braswell also testified that all three casings were discharged from the same firearm.

In describing the gunshot wounds he suffered, Mr. Parker testified the bullet that hit his leg "ripped the nerves out . . . so it's hard for me to stand up for a long time." The bullet that struck him in the shoulder is still "sitting right on [his] spine." According to Mr. Parker, the doctors told him that the bullet on his spine was "too dangerous to take out." After his release from the hospital, Mr. Parker had to relearn to walk and had to use crutches, a wheelchair, and a walker while he recovered.

**Defendant's Testimony at Trial**

The defendant testified to a contradicting version of events. According to the defendant, his appointment with Mr. Parker that day was not to record music, but to buy and sell marijuana. The defendant called Mr. Parker earlier in the day, inquired if he "[had] some weed for sale," and told Mr. Parker that he was looking to purchase a "quarter" bag. According to the defendant, Mr. Parker agreed to sell him some "weed" and told him to call when he arrived at the studio so Mr. Parker could let him in the building. Mr. Bolden gave the defendant a ride to Mr. Parker's studio. The defendant again denied scheduling a studio session for that day.

When the defendant and Mr. Bolden arrived at the studio, they called Mr. Parker to open the door. When Mr. Parker let them in the building, he was carrying an assault rifle and a handgun was hanging out of his pocket. The defendant and Mr. Bolden then followed Mr. Parker upstairs to the studio.

Once upstairs, Mr. Parker laid the assault rifle on the table while Mr. Bolden asked to use the restroom. Mr. Parker directed him to the restroom located on the first floor, and Mr. Bolden left the room for approximately eight to nine minutes. The defendant then gave Mr. Parker $70 for the bag of marijuana. Mr. Parker retrieved the bag from near the computer and handed it to the defendant. However, the defendant believed the bag did not contain a quarter ounce as agreed and demanded his money back. Mr. Parker became aggressive and refused to return the money. When Mr. Parker appeared to be reaching for his handgun, the defendant rushed Mr. Parker and they began to "tussle" for the weapon.

While they were "tussling" for the gun, the gun discharged twice, striking Mr. Parker in the leg. Mr. Parker fell to the ground near the assault rifle. When Mr. Parker reached for the assault rifle and cocked it, the defendant shot Mr. Parker in the arm. It was at this time Mr. Bolden returned upstairs, picked up the assault rifle, and fled. The defendant panicked, grabbed the surveillance monitor, and ran downstairs.

**Christopher Bolden's Testimony at Trial**

Christopher Bolden also testified at trial as to his version of events for that day. Mr. Bolden testified that he was asked by a mutual friend, Peso, to drive the defendant on an errand. Mr. Bolden did not know Mr. Parker and did not know the defendant's purpose for visiting the studio. Upon entering the building, Mr. Bolden immediately asked where the restroom was located. When he returned, several minutes later, he heard the defendant saying "this ain't what it supposed to be, something, get my money back." He then saw Mr. Parker aggressively grab the rifle and say "[Y]'all get the f*** out of here." The defendant began screaming, and Mr. Bolden heard a shot. When he looked up, Mr. Bolden

- 4 -

saw the gun in the defendant's hand and Mr. Parker clutching his leg. Out of instinct, Mr. Bolden grabbed the assault rifle and ran downstairs. While he was running down the stairs, he heard screaming and another gunshot. Once outside, Mr. Bolden placed the assault rifle on the curb. When the defendant came outside he was carrying what "looked like a sheet or cover or something." Mr. Bolden and the defendant left the scene together.

As a result of their actions, the Shelby County Grand Jury returned a five count indictment charging the defendant and Mr. Bolden in Count One with attempted first-degree murder, in Count Two with especially aggravated robbery, and in Count Three with employing a firearm during the commission of a dangerous felony. The defendant was also charged individually in Count Five with unlawful possession of a firearm by a convicted felon. The jury convicted the defendant and Mr. Bolden of especially aggravated robbery.[1] The trial court polled the jury confirming each juror's verdict. Thereafter, the trial court judge stated on the record, "In Count Two, I accept the verdicts again as 13th juror and find both [the defendant] and Mr. Bolden guilty of especially aggravated robbery as charged in Count Two."

On August 22, 2022, the defendant filed a "Motion for New Trial or in the Alternative, Judgment of Acquittal." On December 7, 2022, after a hearing on the defendant's motion, the trial judge stated on the record,

> "Well, I think its very clear you had a factual dispute, which is what a trial is designed to settle. And the jury in this case resolved some of the factual questions against Mr. Brown and found proof in their eyes beyond a reasonable doubt to support the charges that they did convict Mr. Brown. And it's worth noting I think the jury was discerning in that they, their verdicts reflect that they carefully analyzed all the proof. They didn't merely just come to a quick conclusion in that they found some lesser included and there were not convictions in every single offense. So, when – I've talked about all those things. So there's not any reason for me at this, I still accredit the jury's decision on the credibility of the witnesses and the resolution of any conflicts. So, I'm going to deny the motion for new trial at this time."

After the trial court denied the defendant's motion for a new trial, this timely appeal followed.

---

[1] The jury found the defendant not guilty of attempted first degree murder in Count One. The jury found the defendant guilty of possession of a firearm during the commission of a dangerous felony in Count Three and guilty of unlawful possession of a firearm by a convicted felon in Count Five. The trial court later dismissed Counts Three and Five.

*Analysis*

On appeal, the defendant argues that the evidence presented at trial was insufficient to support his conviction for especially aggravated robbery. The defendant also argues that the trial court failed to execute its responsibility as thirteenth juror. The State contends that the evidence at trial was sufficient for the jury to convict the defendant of especially aggravated robbery and that the trial court explicitly acted as thirteenth juror. We agree with the State on both issues.

## I.    Sufficiency of Evidence

### a.  Standard of Review

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190–92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

### b. Especially Aggravated Robbery under Tenn. Code Ann. § 39-13-403

The defendant asserts the evidence at trial was insufficient because the testimony of the victim, Sebastian Parker, was not credible. Additionally, the defendant argues that the State failed to prove the defendant's use of violence was contemporaneous with the taking of Mr. Parker's property. The State contends the jury weighed the credibility of the victim against the credibility of the defendant and ultimately resolved all factual disputes in favor of the victim. Because such issues are to be resolved by the jury as the trier of fact, we agree with the State.

The defendant was convicted by a jury of especially aggravated robbery. Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401. An especially aggravated robbery occurs when a robbery is, "[a]ccomplished with a deadly weapon" and "where the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-403.

At trial, the State introduced evidence that the defendant, and his codefendant, Mr. Bolden, arrived at Mr. Parker's studio with firearms. Mr. Parker testified that when Mr. Bolden pointed a gun at him and said "you know what time it is," he was in fear for his life. Mr. Parker testified the defendant then shot him in the leg, flipped him over, and took his cash and cards. Mr. Bolden then shot the victim in the shoulder. The victim also testified that the defendant left with a surveillance monitor and the personal belongings he had taken from Mr. Parker's pockets. Mr. Bolden left with an assault rifle. As a result of his gunshot wounds, Mr. Parker was hospitalized and continues to suffer pain from a bullet still sitting on his spine.

The defendant argues, however, that the victim's testimony contained inconsistencies. The defendant notes three central points of discrepancies: the victim's misidentification of the weapon used against him; the victim's denial of marijuana in the studio; and the inconsistent descriptions of events the victim provided to the lead investigator. The defense also puts forth the testimony of both the defendant and Mr. Bolden to contradict the testimony of Mr. Parker as to the events of the day.

Despite any contradictory and inconsistent testimony, the jury, by way of their verdict, credited the testimony of Mr. Parker and rejected the defendant's and Mr. Bolden's versions of the events. The jury gave weight to the victim's account and resolved any inconsistencies in his favor. As noted, the determination of credibility and the weight given to the testimony of witnesses is the province of the jury, and they resolve all conflicts in the testimony. *See Pappas*, 754 S.W.2d at 623. The testimony credited by the jury establishes the defendant arrived at the studio and robbed Mr. Parker. In doing so, the defendant used a deadly weapon and inflicted serious bodily injury. Considering this

evidence in light most favorable to the State, there was sufficient evidence at trial to support the defendant's conviction for especially aggravated robbery.

In addition, the defendant contends the State failed to prove that the defendant's use of violence or fear preceded or was contemporaneous with the taking of property. To be found guilty of especially aggravated robbery, "the serious bodily injury suffered by the victim of a robbery accomplished by the use of a deadly weapon must be sustained *during* the commission of the robbery. *State v. Henderson*, 531 S.W.3d 687, 694 (Tenn. 2017). "A robbery accomplished with a deadly weapon is complete once the accused has completed his theft of all the property he intended to steal." *Id.* at 698. The State is accorded the strongest legitimate view of the evidence and all reasonable or legitimate inferences which we may draw from the evidence. *See id.*

In viewing the evidence in the light most favorable to the State, it is clear the thefts and the infliction of serious bodily injury were all part of one act. First, the defendant and his codefendant arrived at the studio intending to rob the victim. Mr. Bolden pointed a gun at Mr. Parker and stated, "[Y]ou know what time it is." The victim was then knocked to the floor and shot, immediately after which the defendant searched the victim for and took from the victim cash and credit cards. After the initial taking, the victim was shot again after which Mr. Bolden stole an assault rifle and the defendant stole a monitor as they fled the building. Accordingly, the evidence is sufficient to support the defendant's conviction of especially aggravated robbery.

## II.    "Thirteenth Juror Rule"

Finally, the defendant contends that the trial court failed to undertake its role as "thirteenth juror" pursuant to Rule 33(d) of the Tennessee Rules of Criminal Procedure. Tennessee Rule of Criminal Procedure 33(d) provides that "a trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of evidence." This procedural rule has been described as "the modern equivalent to the 'thirteenth juror rule,' whereby the trial court must weigh the evidence and grant a new trial if the evidence preponderates against the weight of the verdict." *State v. Blanton*, 926 S.W.2d 953, 958 (Tenn. Crim. App. 1996). The rationale behind the thirteenth juror rule is that "[i]mmediately after the trial, the trial court is in the same position as the jury to evaluate the credibility of witnesses and assess the weight of the evidence, based upon the live trial proceedings." *State v. Moats*, 906 S.W.2d 431, 434 (Tenn. 1995). Rule 33(d) "imposes upon a trial court judge the mandatory duty to serve as the thirteenth juror in every criminal case, and that approval by the trial judge of the jury's verdict as the thirteenth juror is a necessary prerequisite to imposition of a valid judgment." *State v. Carter*, 896 S.W.2d 119, 122 (Tenn. 1995). "The judge who presides at trial should explicitly approve or disapprove the verdict as thirteenth juror promptly after the jury renders its verdict." *State*

*v. Ellis*, 453 S.W.3d 889, 908 (Tenn. 2015). The Court also noted that "we discourage trial judges from waiting to rule as a thirteenth juror until the hearing on a motion for new trial." *Id.* at 910.

In the instant case, after reading the jury's verdict of guilty, the trial court stated explicitly, "I accept the verdicts . . . as 13th juror and find both Mr. Brown and Mr. Bolden guilty of especially aggravated robbery as charged in Count Two." Thus, contrary to the defendant's claim, the trial court unequivocally approved the verdict in its role as thirteenth juror at the conclusion of trial. Therefore, the conviction was approved and the judgment of the jury was rendered valid.

The defendant argues that regardless of the statements made at the time of verdict, the trial judge's statements at the hearing on the Motion for New Trial were an absolution of the thirteenth juror responsibility. However, this argument is without merit. The trial court cannot absolve itself of a responsibility that it has already discharged. "Once the trial court approves the verdict as the thirteenth juror and imposes judgment, the review of the evidence on appeal is quite limited." *State v. Burlison*, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993). We conclude that the trial court met its responsibility under Rule 33(d) as thirteenth juror. The defendant is not entitled to relief.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
J. ROSS DYER, JUDGE

- 9 -